Bissell, J.
The judgment whereby it was found that Solomon had *180 violated an ordinance of the city of Denver, and thereby committed an offense for ■which he was sentenced to pay a fine cannot be upheld, unless we adjudge the ordinance valid and hold the city had the right to pass it. The whole case turns on the question of power. Incidently there will necessarily be discussed the invalidity of some of the provisions of the ordinance.
Solomon was a pawnbroker doing business in Denver and did not obey the ordinance with respect to a license. Failing to procure one he was prosecuted before the police magistrate, adjudged guilty, fined, and on appeal to the county court he was there likewise sentenced, and from this judgment he is appealing. • The power of the city, if any, is derived from the provisions of the special charter passed by the legislature in 1893. Session Laws, 1893, p. 191. These are found in the tenth subdivision of section 20, and in section 77 of the same act. The tenth subdivision grants to the city authorities exclusive power to provide for the licensing, etc., of all trades, professions and amusements. Section 77 provides that the fire and police board shall have full and exclusive authority to grant and refuse licenses for pawnbrokers and others, subject to the limitations of the twelfth subdivision of article 2 of the act to which we need not refer. Under this authority the common council passed an ordinance which was after-wards slightly amended. It is only important to state its general terms as it now stands, to wit: “ That any person, firm, or corporation engaged in the business of pawnbroker should be required to obtain a license.” There were various restrictions with respect to the presentation of the petition to the fire and police board, the necessary contents of it, and the board was only authorized to grant it when the regulations had been complied with. There were sundry limitations on the power of the board with respect to the deposit of a fee and the transfer of the license and the keeping of a record. The license fee was fixed at $500 payable semi-annually; the applicant was bound to give a bond, to be approved by the mayor and the city treasurer, and the treasurer was empowered *181 to call on the licensee to furnish a new bond. The city then attempted to regulate the business of pawnbroking, designating the persons to whom loans might be made, and the conditions under which they could be taken, and then prescribed the rate of interest which the pawnbroker could charge which “ might not be more than the legal rate,” and “ in no case more than 3 per cent per month.” This provision seems a little inconsistent with itself, but the decision is not put on that basis. The charter was passed on April 3, 1893. On the same day, and by the same legislature an act was passed concerning pawnbrokers and regulating the transaction of that business. That act, speaking generally, provided that no pawnbroker should carry on business without procuring a license from the proper authorities, granted the city authorities power to determine the terms and conditions on which the license should be issued, and further, that the mayor should sign the license and approve the bond. The act further prescribed the mode and method which the pawnbroker should adopt in the transaction of his business with reference to keeping books and delivering memorandums of the loan, and then limited the interest which the pawnbroker might charge on loans running from $5.00 to $50.00 or over. The act inhibited them from selling pledges except under certain conditions and on giving certain notices, and then directed the disposition of the surplus money which might come from the sale. Section 10 provided a penalty for the violation of the provisions of the act, making any violation a misdemeanor. The punishment was a fine or imprisonment or both. Section 14 made it applicable to pawnbrokers -in all cities, towns, or villages, whether incorporated or acting under the general law, special act, charter, or otherwise. It is thus evident that the sole question presented is whether the general provisions contained in the city charter were intended to supersede the special act on the subject, and whether it must be assumed that the city authorities had a right to pass the ordinance. We cannot so conclude. Undoubtpdly, the special charter provided that the fire and police board should have exclusive *182 authority to license and regulate pawnbrokers, and it is quite possible that that provision is not inconsistent with the general act on the same subject passed the same day by the same legislature. It is quite easy to see that the city council might pass an ordinance providing for the details requisite to carry out the general act, and it is quite within the power conferred by the charter for the city council to remit the examination of the petitions and the determination of their sufficiency and regularity to the fire and police board which is a body designated for the purpose. It may be that if the ordinance had only provided that the fire and police board should pass on the sufficiency of the bonds, approve them and issue the license, that this would not be such a deviation from the provisions of the general act as would invalidate the ordinance, but this we need not determine. In passing the ordinance the city authorities went beyond any power they possessed. It is always true that cities can only exercise those powers which are expressly conferred, and that in general they are subject to whatever restrictions or regulations are contained in the grant, and that no authority will be implied which is not directly conferred or absolutely essential to the exercise of what is expressly granted. The powers conferred on the fire and police board by the charter are not necessarily inconsistent with the general act respecting the same subject, and while the legislature undoubtedly intended to grant to that subdivision of the city authority, the power to pass on petitions, determining their sufficiency in form and in substance and the qualifications and character of the applicants, it does not necessarily and inevitably follow that by this grant the legislature intended to remit the whole subject of the regulation of pawnbrokers to the city authorities. If the legislature had not spoken otherwise possibly the powers could be implied and we might assume that such was the legislative purpose. When, however, the legislative body undertakes by general act, which in express terms is made applicable to all cities, whether acting under general law or charter, to control and regulate this business, prescribing the terms and conditions *183 on which the business may be carried on, it must be taken as a limitation on the power granted by the charter when this power is implied, and is not expressly conferred. We may hot assume that the legislature passed two acts on the same day respecting the same subject-matter which áre totally inconsistent. Under all the rules of construction we are bound to support both acts, if the thing be possible. It is only in a case of repugnancy that we can adjudge either the one or the other to be invalid and void. It is not impossible to reconcile the two providing we read the charter as a grant of power to the fire and police board as a component part of the city government to grant a license and to the city council power to pass ordinances with respect to the procedure to obtain the right to do this business. The two statutes can stand with this construction. To assume what the city contends for, that the charter overrules the general act, and. that full authority is granted the city authorities to regulate and control pawnbrokers, passing such ordinances as they see fit for the purpose, is to override the legislative will which has in express terms made the general act applicable to cities acting under a special charter. It is very easy to see how in obedience and in subordination to the general statute, and yet acting in entire accord with the provisions of the charter, it would be possible for the law officers of the city to pass an ordinance which should provide a method of procedure which would be in entire harmony with the general legislation on the subject. Should such an ordinance be passed and a pawnbroker attempt to do business in the city without procuring the license and paying the fee which the authorities might exact, he would undoubtedly be subject to prosecution under the general act. The only need of an ordinance is to determine the mode and method of procedure whereby the act and the ordinance together will make a complete system which will control and regulate the business of pawnbroking in the city of Denver, and entitle the authorities to compel a distinct and careful observance of its provisions. This is requisite to the control and regulation of this business. The remedies are ample. *184 The inconsistency between the ordinance and the act is better illustrated by the consideration of the provisions with reference to interest than in respect to any other matter. According to the ordinance the pawnbroker could in no case charge more than three per cent per month, and for a violation of that provision of the ordinance a penalty was prescribed. This is in clear and distinct opposition to the provisions of the general act. Acts of 1893, p. 360.
By it the pawnbroker is entitled to charge on loans of 15.00, ten per cent a month; between $5.00 and $50.00, five per cent a month, and on all sums of $50.00 or more, three per cent a month. Clearly the pawnbroker in the transaction of his business may charge the rates of interest which that act permits unless there is express power given to the city by the terms of the charter to regulate and control the rate. No such express authority is given nor is there anything to be found hi the charter from which the authority can be derived unless it is implied from the general grant of authority to which we have referred. It may easily be that this authority to grant licenses was given as a means or mode of carrying out the provisions of the general statute, and we are not at liberty on any rule of construction with which we are familiar, or to which counsel for the city have cited us which permits us to imply an authority in direct opposition to a general statute on the same subject.
These considerations lead us to the conclusion that the ordinance under consideration is invalid, and consequently the court was without power to try, convict, and sentence the defendant for its violation. What remedy the city would have in case they should pass an ordinance containing provisions in entire harmony with the statute and passed in order to carry it into effect, we do not undertake to decide. No such question is presented. The statute is a full and complete regulation of the business, provides ample means and methods taken in connection with the provisions of the city charter for the granting of licenses and the regulation of the business, and beyond this the city may not go.
*185 The judgment of conviction must be set aside and the case remanded with directions to the court below to dismiss the prosecution.

Reversed and remanded.